REQUESTED BY: Senator James E. Goll Nebraska Legislature State Capitol, Room 2107 Lincoln, NE 68509
Dear Senator Goll:
You have asked for a very comprehensive opinion from this office as to various effects of retrocession of the Winnebago Reservation in Thurston County as proposed in Legislative Resolution 57.
Federal Indian law, as developed by Congress and the courts, is very complex and, in many respects, rather unclear. Also it is very difficult to give specific answers to general questions directed to any field of law because, usually, the results depend on the particular facts of particular cases. Therefore, we are unable to provide the kind of certain and specific answers you seek. Nonetheless, we can provide some guidelines which should prove useful in anticipating some of the effects of the proposed retrocession.
General Background
Generally speaking, federal Indian laws and treaties pre-empt state laws in Indian country so that without a specific federal statute delegating jurisdiction over areas of Indian country to a state, jurisdiction within Indian country remains exclusively in federal and tribal hands.
Public Law 280, enacted by Congress in 1953, did make a specific delegation of jurisdiction to Nebraska and four other states granting those states authority over criminal and civil matters arising within Indian country located within their borders.
It has generally been held, however, that this Public Law 280 grant of jurisdiction extended only to matters over which the federal government had earlier had authority and that it was not meant to detract from tribal jurisdiction as it existed. Therefore, it is `probable that this jurisdiction of the tribes remains concurrent with the states in Indian country subject to Public Law 280 to the same extent it was concurrent with the federal government prior to the Act.' F. Cohen, Handbook of Federal Indian Law, 367 (1982 ed.).
In 1968 Congress amended Public Law 280 to provide the states a means to give back to the federal government `all or any part of the criminal or civil jurisdiction, or both' which the states had acquired under the original Public Law 280. 25 U.S.C. § 1323. This act of giving back jurisdiction to the federal government is called `retrocession.'
Civil Matters
Your letter seems to assume that in civil matters retrocession will have the effect of increasing the authority and jurisdiction of the Winnebago Tribe. This is not the case, however, because, as pointed out above, even under Public Law 280 the tribe retained substantial inherent tribal authority over civil matters arising in Indian country. While some of this tribal jurisdiction and authority may have been concurrent with state jurisdiction (i.e., existing together with it), or while the Tribe may have chosen not to exercise all of its authority and jurisdiction, nonetheless that tribal jurisdiction and authority was always there. Therefore, rather than increasing the authority and jurisdiction of the Tribe, what retrocession will do is substantially decrease the authority and jurisdiction of the state in connection with civil matters arising in Indian country. Winnebago tribal authority and jurisdiction will continue as is or, presumably, will be increased by the Tribe to cover any gaps in its civil law.
The result of this is that civil matters arising in Indian country involving Indians will generally have to proceed before a tribal court. The state courts will not have jurisdiction, even if one of the parties is a non-Indian. However, where such a matter arises in Indian country and both parties are non-Indians, the state courts would have exclusive jurisdiction unless somehow the matter had a direct effect on Indians, the Tribe, their property or federal activities. This would likely be an unusual situation. And we further note that the language of proposed LR 57 confirms this conclusion by leaving exclusive jurisdiction in the state courts `over those causes of action arising within the Reservation where both parties are non-Indians and tribal self-government is not implicated.' Further in this connection proposed LR 57 states:
 The State of Nebraska and its political subdivisions shall continue to exercise jurisdiction over those civil causes of action for which the Tribe has not assumed exclusive jurisdiction through retrocession, i.e., over those civil causes of action which affect the interest of the State of Nebraska or its citizens to the point where tribal self-government would be affected.
Another assumption in your letter seems to be that somehow after retrocession Indian and non-Indian property within the Reservation will be treated differently for jurisdictional purposes in civil matters. For example, you refer to `tortious acts on Indian and non-Indian property.' A tortious act within Indian country will be dealt with under the jurisdictional guidelines set out above regardless of whether it occurred on property owned by Indians or property owned by non-Indians. In other words, if an Indian is a party, the tribal court will hear the action. If only nonIndians are parties, the state courts will have jurisdiction. Therefore, it is not correct to assume that Indian property and non-Indian property within Indian country will be treated differently for civil jurisdictional purposes.
What we have said to this point should answer your inquiry with regard to disputes between property owners, tortious acts on Indian and non-Indian property, contracts involving Indian and non-Indian property, quiet title actions, and other actions involving Indian and non-Indian property.
Taxation and Eminent Domain
You ask if the Tribe will have additional powers regarding taxation and condemnation as a result of retrocession. The answer would appear to be `no.' Even without retrocession, under Public Law 280 the Indian tribes retained broad authority in the areas of taxation and eminent domain (i.e., condemnation). Retrocession will not affect this authority one way or the other.
Of course, there is a large body of law dealing with the power of tribes to impose taxes on non-Indians and nonIndian property or to condemn such property located within Indian country. It is a complex subject; but for purposes of your inquiry it is sufficient to say that retrocession will not increase or alter those powers to tax and condemn. Moreover, any exercise of those powers by the Tribe is subject to a number of limitations imposed by federal law, including due process, equal protection and just compensation considerations.
Estates
Your inquiry regarding estates gets into a highly complex area also. There are no easy answers because each situation would depend on its unique facts: Whether the decedent was an Indian or non-Indian; where the decedent was domiciled at date of death; whether the property to be passed is in Indian country or somewhere else; whether the property was held in fee simple title or some other type of ownership; etc. Were there to be full unrestricted retrocession, this subject would require extensive research, especially as to the effect on non-Indians domiciled within Indian country and owning property there.
However, we believe that the retrocession resolution, as currently drafted, handles this problem as to non-Indians by stating:
 The State of Nebraska and its political subdivisions shall continue to exercise jurisdiction over those civil causes of action for which the Tribe has not assumed exclusive jurisdiction through retrocession, i.e., over those civil causes of action which affect the interest of the State of Nebraska or its citizens to the point where tribal self-government would be affected. Accordingly, the state shall retain exclusive jurisdiction over those causes of action arising within the Reservation where both parties are non-Indians and tribal self-government is not implicated.
Descent and distribution of property owned by nonIndians should not affect tribal self-government. Therefore, the state would have exclusive jurisdiction. On the other hand, the descent and distribution of on-reservation property of an Indian domiciled on the Reservation would likely fall under the exclusive jurisdiction of the Tribe because it would affect the welfare of the Tribe and its members.
Enforcement of Judgments
You ask about enforcement of judgments after retrocession. We assume you are asking to what extent state court judgments will be enforceable in Indian country by execution or seizure by state authorities.
It appears that if the judgment debtor is an Indian and his or her property is in Indian country there could be no execution of the state court judgment without registering the judgment with the tribal court and getting process to issue from that court.
The situation when the judgment debtor is a non-Indian and the property sought is located within Indian country is very unclear. Generally, execution of judgments is confined to the territorial jurisdiction of the court issuing process. So if the state court does not have territorial jurisdiction in Indian country, its process cannot reach there. But if the state court had jurisdiction to hear the dispute and render a judgment, because both parties were nonIndians, then it might be argued that the state court's territorial jurisdiction extends to property owned by non-Indians within the reservation. However, we simply cannot say for certain how that issue, if it arises, will be decided.
Procedures Where There is Concurrent Jurisdiction
You ask about procedures to be followed where jurisdiction of the Tribe and jurisdiction of the state courts overlap in civil matters. This should cause no major problem. There are already many instances where different courts and different governmental authorities have concurrent jurisdiction over civil disputes. There are well-accepted rules which are followed to resolve these situations, and there should be nothing unique about any concurrent jurisdiction of a tribal court and a state court. When that happens, generally, the plaintiff has his or her choice of forum. The other jurisdiction should normally defer to the court in which the litigation was started.
Arrests and Criminal Prosecutions
With the exception regarding offenses involving the operation of motor vehicles by non-Indians as set forth in paragraph 2 of the retrocession resolution, county and state authorities would have no authority to make arrests or prosecute crimes committed within Indian country regardless of whether the particular land was owned by Indians or nonIndians. Tribal and federal authorities would have that responsibility. It should be noted, however, that a crime by a non-Indian against a non-Indian would still be prosecuted in state court.
Again the distinction you draw between land owned by Indians and land owned by non-Indians within Indian country is simply not pertinent when it comes to criminal jurisdiction. Basically, the power to investigate crimes and make arrests within Indian country would belong to tribal and federal authorities regardless of who owned the particular piece of land involved. However, it is important to remember that, regardless of the nature of the crime, a nonIndian defendant cannot be tried before a tribal court.
Area Covered by Retrocession
You additionally ask whether a retrocession resolution must cover all area within the boundaries of Indian country or whether it can be limited to land owned by Indians only. There is no clear answer to this question.
The federal retrocession statute is codified at25 U.S.C. § 1323. It reads in pertinent part as follows:
 The United States is authorized to accept a retrocession by any State of all or any measure of the criminal or civil jurisdiction, or both, acquired by such State pursuant to the provisions of section 1162 of Title 18, section 1360 of Title 28, or section 7 of the Act of August 15, 1953 (67 Stat. 588), as it was in effect prior to its repeal by subsection (b) of this section.
While this statutory language is somewhat unclear in the context of your particular inquiry, it does appear that a reasonable reading of it would allow retrocession to be limited to certain areas within Indian country. The language allows retrocession `of all or any measure of the criminal or civil jurisdiction, or both.' The term `any measure' could be interpreted to mean a measure of area for jurisdictional purposes as well as a measure of the nature of the jurisdiction retroceded.
Two federal court cases have arisen in Nebraska in which the nature of retrocession under 25 U.S.C. § 1323 was at issue. Omaha Tribe of Nebraska v. Village of Walthill,334 F. Supp. 823 (D.Neb. 1971), affirmed, 460 F.2d 1327
(8th Cir. 1972), cert. denied, 409 U.S. 1107; UnitedStates v. Brown, 334 F. Supp. 536 (D.Neb. 1971).
The background of both of these cases was the same. In 1969 the Nebraska Legislature passed a retrocession resolution seeking to give back to the federal government criminal jurisdiction in all `areas of Indian country located in Thurston County, Nebraska.' LR 37, 80th Legislature, First Session. This description would have included both the omaha and Winnebago Reservations.
After consulting with the Omaha and Winnebago tribes the Secretary of the Interior, acting under 25 U.S.C. § 1323
and Executive Order No. 11435, accepted on behalf of the United States the retrocession of criminal jurisdiction only over Omaha Indian country and not Winnebago Indian country. Subsequently the two cases cited above were brought before the federal district court in Nebraska; and one of the issues in both cases was whether or not the retrocession of criminal jurisdiction over only Omaha Indian country was effective because the United States had not accepted the totality of the retrocession offered by the Nebraska Legislature in LR 37.
One case (Omaha Tribe) was decided by Judge Robinson, and the other (Brown) was decided by Judge Denney. In both cases the court went extensively through the history and purpose of 25 U.S.C. § 1323 and concluded that the state could offer to retrocede any part or all of the jurisdiction it had acquired under Public Law 280 and that the United States could accept or not accept any part or all of the jurisdiction which the state was seeking to retrocede. In short, the state can couch its retrocession offer in any jurisdictional terms it chooses. It is then up to the United States (acting through the Secretary of the Interior) to accept any or all or none of the jurisdiction so offered by the state.
Therefore, we believe that the state could offer in its retrocession resolution to retrocede criminal and civil jurisdiction over only Indian-owned land in Winnebago Indian country. However, whether, as a practical matter, such a division of jurisdiction would be realistic and workable is another question. It could create an even more confused jurisdictional picture and cause more problems than it would help. Moreover, the Secretary of the Interior might well not accept any such limited offer of retrocession. Such a split-up of jurisdiction within the boundaries of Indian country could be deemed to conflict with federal Indian policy encouraging tribal self-government and Indian responsibility for governance of the areas within Indian country.
Nonetheless there appears to be nothing in the federal retrocession statute which would prohibit the state from making the offer you suggest. If the offer is accepted by the federal government, we suspect that it would take federal court litigation to decide for certain if such a retrocession is valid under 25 U.S.C. § 1323.
We hope that the foregoing discussion will be helpful to you in considering the effects of LR 57. As indicated at the outset, Indian law is extremely complex and arises from an amalgam of ancient treaties, numerous federal statutes, many court decisions, countless federal rules, regulations and procedures, tribal customs and traditions, and some applicable state laws. Therefore, we cannot do more than describe what we perceive to be the general effects of retrocession in various settings. We have attempted to do that in the foregoing discussion.
Sincerely,
ROBERT M. SPIRE Attorney General
Charles E. Lowe Assistant Attorney General